UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:17-cr-00007-JRS-CMM |
| | ) | |
| SHARI EGEBRECHT, | ) | -01 |
| | ) | |
| Defendant. | ) | |

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Pending before the Court is Shari Egebrecht's renewed Motion for Order of Compassionate Release Reducing Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), dkt. [68], filed pursuant to § 603 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). Ms. Egebrecht seeks immediate release and the reduction of her sentence to time served.

Ms. Egebrecht, by counsel, filed her motion on May 29, 2020. Dkt. 68. The Government has opposed the motion, dkt. 70, and on June 12, 2020, Ms. Egebrecht replied, dkt. 71. The motion for compassionate release is ripe for the Court's consideration.

Because Ms. Egebrecht waived her right to file a motion under § 3582, her motion is **DENIED**.

## I.
## BACKGROUND

In 2015, Ms. Egebrecht used a false social security number to apply for a job as the accountant and controller for Sullivan Automotive Group ("Sullivan Automotive") and Bradley Bourbonnais Auto Group ("Bradley Bourbonnais"). By using a false social security number, Ms. Egebrecht was able to conceal the fact that she was a convicted felon who was on parole in Illinois

for 2 counts of theft over $10,000.

Ms. Egebrecht was hired in July 2015 and split her time between Sullivan Automotive in Sullivan, Indiana and Bradley Bourbonnais in Bourbonnais, Illinois.

In September 2015 – approximately 2 months after she was hired – Ms. Egebrecht opened an unauthorized corporate American Express credit card through Sullivan Automotive. She used the American Express card to make numerous personal purchases between September 2015 and October 2016.  To conceal the existence of the American Express card, Ms. Egebrecht had the American Express statements mailed to her home. Ms. Egebrecht, however, used Sullivan Automotive's BMO Harris bank account, which she had access to by virtue of her position, to make payments on the American Express card.

Ms. Egebrecht resigned her employment in April 2016, and Sullivan Automotive and Bradley Bourbonnias hired Angela Eaton as her replacement.  In May 2016, Ms. Egebrecht was re-hired as a "non-employee consultant" to train Ms. Eaton.

On July 6, 2016, Ms. Egebrecht offered to take $5,800.19 in cash from Sullivan Automotive and deposit it at the bank. When Ms. Egebrecht returned from the bank, she did not have a deposit slip.

The next morning, Ms. Eaton checked the bank account and noticed that there were no deposits from Sullivan Automotive on July 6, 2016. When the bank opened at 9:00 a.m., Ms. Eaton called the bank manager who confirmed that no deposit had been made on behalf of Sullivan Automotive on July 6. Ms. Eaton then informed the General Manager of Sullivan Automotive about the missing money. The General Manager informed the owner, who contacted Ms. Egebrecht, ordered her to return the missing cash and her keys, and terminated her consulting agreement.

Ms. Eaton and the General Manager later discovered that between September 2015 and October 2016, Ms. Egebrecht used the unauthorized American Express card to purchase more than $149,000 in personal goods and services including clothing, furniture, exercise equipment, electronics, online gaming fees, and legal fees.

Ms. Egebrecht was indicted in April 2017, and pled guilty to one count of wire fraud, in violation of 18 U.S.C. § 1343, in October 2019.  She was sentenced on October 3, 2019, to 30 months of imprisonment, followed by 3 years of supervised release, and was ordered to pay $149,745.64 in restitution. Dkt. 51. Judgment was entered October 6, 2019. Dkt. 52. Ms. Egebrecht was permitted to self-report to the Bureau of Prisons and she began serving her sentence at Federal Medical Center Carswell ("FMC Carswell") on November 21, 2019. Dkt. 70-1. Her full-term release date is May 19, 2022, and her projected statutory release date with good conduct time ("GCT") is January 5, 2022.  *Id.*

## II.
## DISCUSSION

Ms. Egebrecht seeks compassionate release under § 603 of the First Step Act. As relevant here, § 603 amended 18 U.S.C. § 3582(c)(1)(A) to allow inmates to bring motions for sentence reduction based on "extraordinary and compelling reasons" directly with courts. *See* 132 Stat. at 5239. Before the First Step Act was enacted on December 21, 2018, only the Bureau of Prisons could bring such a motion. Ms. Egebrecht argues that her medical conditions present extraordinary and compelling reasons to grant her motion for compassionate release. The Government opposes her motion on three grounds: 1) she waived her right to bring a § 3582 motion; 2) she has not established extraordinary and compelling reasons to reduce her sentence; and 3) the § 3553(a) factors counsel against a reduction.

The Court notes that as of June 25, 2020, FMC Carswell has reported two inmate cases of COVID-19. One inmate died and one inmate recovered. There are currently no active inmate cases. *See* https://www.bop.gov/coronavirus. Fortunately, it is not a hotspot for COVID-19.

Ms. Egebrecht argues that she has already spent over a year in prison. Dkt. 68 at 18. At the time she filed the instant motion she had, in fact, served only six months of her sentence. She further argues that she has asthma, chronic obstructive pulmonary disease ("COPD"), diabetes, hypertension, and heart failure, which are particularly concerning when it comes to COVID-19. She alleges that she will have to have heart surgery upon her release, but she has not directed the Court to any medical records supporting that assertion. Medical records do indicate that she is currently receiving treatment for: mental health disorders; arthritis including spondylosis (arthritis of the spine); asthma; bradycardia (low heart rate); hyperlipidemia (high cholesterol); hypertension (high blood pressure); gastro-esophageal reflux disease; and unspecified chest pain. Dkt. 70-2 at 4-5.

The Court turns to the Government's defense of waiver because it is dispositive. Ms. Egebrecht signed a plea agreement on April 9, 2019. Dkt. 40. The petition to enter a plea of guilty was filed on April 16, 2019. *Id.* As noted above, the plea was accepted, and Ms. Egebrecht was sentenced on October 3, 2019. Dkt. 51. As part of that plea agreement, Ms. Egebrecht waived various rights. Paragraph 23 of the plea agreement provides as follows:

> **23. Later Legal Challenges:** Additionally, the Defendant expressly agrees not to contest, or seek to modify, the Defendant's conviction or sentence or the manner in which either was determined in any later legal proceeding, including but not limited to, an action brought under l8 U.S.C. § 3582 or 28 U.S.C. § 2255. As concerns this Section 3582 waiver, should the United States Sentencing Commission and/or Congress in the future amend the Sentencing Guidelines to lower the guideline range that pertains to the Defendant's offense and explicitly makes such an amendment retroactive, the Government agrees that it will not argue that this waiver bars the Defendant from filing a motion with the district court pursuant to l8 U.S.C. § 3582(c)(2) based on that retroactive Guidelines amendment. However, if the

4

Defendant files such a motion, the Government may oppose the motion on any other grounds. Furthermore, should the Defendant seek to appeal an adverse ruling of the district court on such a motion, the Government may claim that this waiver bars such an appeal. As concerns the Section 2255 waiver, the waiver does not prevent claims, either on direct or collateral review, that the Defendant received ineffective assistance of counsel.

Dkt. 40.

"When the defendant pursuant to the plea agreement has knowingly and voluntarily waived his appellate rights, and the terms of that waiver are express and unambiguous, we will enforce those terms." *United States v. Smith*, 759 F.3d 702, 706 (7th Cir. 2014). The same rule applies to waivers of the right to file a motion for sentence reduction. *See United States v. Soto-Ozuna*, 681 F. App'x 527, 528 (7th Cir. 2017) (holding that motion for sentence reduction under 18 U.S.C. § 3582(c)(2) was barred by plea waiver agreeing not to "seek to modify his sentence . . . in any type of proceeding."). Plea waivers are upheld and enforced with limited exceptions in cases in which (1) "the plea agreement was involuntary," (2) "the district court relied on a constitutionally impermissible factor (such as race)," (3) "the sentence exceeded the statutory maximum," or (4) the defendant claims ineffective assistance of counsel in relation to the negotiation of the plea agreement. *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011) (internal quotation marks and quoted authority omitted); *Gaylord v. United States*, 829 F.3d 500, 505 (7th Cir. 2016).

Here, the express terms of the plea waiver forbid Ms. Egebrecht from doing what she seeks to do with her motion for compassionate release—that is, seeking to modify her sentence "in any later legal proceeding, including but not limited to, an action brought under 18 U.S.C. § 3582."[1]

---

[1] A motion for compassionate release under § 603 of the First Step Act is a motion under 18 U.S.C. § 3582(c)(1)(A). In *United States v. Sutton*, the Seventh Circuit held that the First Step Act and not Section 3582(c)(1)(B) is the "vehicle" through which a defendant seeks relief. *Sutton,* No. 19-2009, 2020 WL 3428076, at *4 (7th Cir. June 23, 2020). But that holding is limited to motions seeking relief under § 404(b) of the First Step Act. *Sutton*, 2020 WL 3428076, at *4 ("Critically, and *unlike the other two exceptions to*

Some courts have refused to enforce plea waivers where the defendant was sentenced years before the First Step Act was passed on December 21, 2018, thereby making it impossible for the defendant to "knowingly" waive any claim under the Act. *See, e.g., United States v. Ellerby*, No. CR CCB-07-064, 2020 WL 2395619, at \*2 (D. Md. May 12, 2020) (defendant who pled guilty in 2016 could not have waived his right to bring a motion under the First Step Act); *United States v. Burrill*, No. 17-CR-00491-RS-1, 2020 WL 1846788, at \*2 (N.D. Cal. Apr. 10, 2020) (movant for compassionate release who waived his right to seek relief § 3582 in 2017 was not barred). But this is not such a case because Ms. Egebrecht signed her plea waiver in April 2019—a few months after the First Step Act was enacted. This is also not a case in which the plea agreement precluded only "collateral attacks" against the defendant's sentence without any mention of § 3582. *See United States v. Chavez-Salais*, 337 F.3d 1170, 1172 (10th Cir. 2003) (plea agreement did not bar a motion to reduce sentence under § 3582 where it only referenced "collateral attacks").

Ms. Egebrecht argues in her reply that she did not knowingly waive her right to seek a reduction in sentence under § 3582 "as it is presently construed due to her rights which were only recently expanded by the First Step Act and the unforeseen and extraordinary COVID-19 pandemic…." Dkt. 71.  But the portions of the First Step Act that amended § 3582 and allowed defendants to bring motions for compassionate release directly with the district court were in effect as of December 21, 2018, a few months before she entered into the plea agreement. The plea agreement specifically bars actions brought under § 3582. The plea agreement further acknowledges that if Congress lowered the applicable guideline range and made it retroactive, the Government would not argue that the § 3582 waiver bars a motion brought based on the retroactive

---

*§ 3582(c),* subsection (c)(1)(B) does not even refer to who can move for modification or how." (emphasis added)). Regardless, Ms. Egebrecht's plea waiver prohibited her from seeking to modify her sentence in "any later legal proceeding," which plainly encompasses her motion for compassionate release.

guideline amendment. This exception to one type of § 3582 motion did not include motions for compassionate release even though at the time of the plea, § 3582 was a vehicle for compassionate release. Ms. Egebrecht has not cited any authority holding that a waiver of a right is not knowing and voluntary simply because the right is a relatively new one.

And, contrary to Ms. Egebrecht's suggestion, there is no generalized rule that "unforeseen events" render a plea waiver invalid.  Instead, the Seventh Circuit has enforced plea waivers even when significant unforeseen events occur after the plea waiver was signed. For example, in *United States v. Bownes*, 405 F.3d 634 (7th Cir. 2005), the defendant signed an appeal waiver. After he was sentenced, the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005). The defendant filed a direct appeal and argued that his appeal waiver was not knowing and intelligent because he could not have anticipated *Booker* and *Booker* effected a "sea change" in the law. The Seventh Circuit rejected this argument and enforced the plea waiver, reasoning:

> In a contract (and equally in a plea agreement) one binds oneself to do something that someone else wants, in exchange for some benefit to oneself. By binding oneself one assumes the risk of future changes in circumstances in light of which one's bargain may prove to have been a bad one. That is the risk inherent in all contracts; they limit the parties' ability to take advantage of what may happen over the period in which the contract is in effect.

*Id.* at 636. The Court is unaware of any binding or otherwise persuasive authority counseling against the enforcement of a plea waiver provision based solely on COVID-19. Moreover, to date, FMC Carswell appears to have done well at preventing the spread of the virus. While COVID-19 has wrought unprecedented circumstances, under the facts presented here and the rationale of *Bownes*, the Court finds that the waiver provision must be enforced.

**III.**

**CONCLUSION**

For the above reasons, Ms. Egebrecht's Motion for Compassionate Release, dkt. [68], is

**DENIED.**

    **IT IS SO ORDERED.**

Date:   6/29/2020

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel